

Keith M. Lundin
U.S. Bankruptcy Judge

Dated: 09/20/10

# UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE

In re: DONALD BRANDT,

     *Debtor.*

Case No. 3:09-bk-08066
Chapter 11

Hon. Keith M. Lundin

---

DONALD BRANDT,

     *Plaintiff,*

     *v.*

JOE WEYANT, JOE WEYANT ATTORNEY AT
LAW, PLLC, TRACY ANN PUCKETT, DENNIS
STANFORD, LOWRY SHRADER, JULIANNE
BRODEN, KELLER WILLIAMS REALTY, LANCE
MILLER, THE KENEDY LAW FIRM, PLLC,
CARRIE GASAWAY and SHARON MASSEY,
both individually and a/b/a GASAWAY &
MASSEY, and FARMERS & MERCHANTS BANK,

     *Defendants*.

Adv. No. 3:09-0305A
Adv. No. 3:09-0416A

Hon. Keith M. Lundin

## MEMORANDUM

The issue on summary judgment is whether "may not" in § 526(a) of The Servicemembers' Civil Relief Act of 2003 (SCRA), 50 U.S.C. app. § 526(a), mandates the tolling of all state statutes of limitations in this adversary proceeding. The tolling provision is mandatory and Plaintiff's causes of action are not time barred. The following are finding of fact and conclusions of law. FED. R. BANKR. P. 7052.

## FACTS

Plaintiff, Donald Brandt, entered active duty with the United States Army on April 19, 1990. He has served as a full-time career officer since that date. Brandt has been deployed to Iraq, stationed state-side and moved between bases within and outside the United States at all times relevant to this adversary proceeding.

Brandt is a Chapter 11 debtor. In this adversary proceeding, Brandt claims he was victimized by an unscrupulous real estate agent and others with respect to investments, borrowings and the use of his bank accounts while he was unavailable because of military duty. The defendants have cross-claimed among themselves and some have counter-claimed that Brandt is responsible for some or all of the financial misfortune he experienced.

Relying on Tennessee statutes of limitations (that range from 1 year to 3 years) for each cause of action asserted by Brandt, the defendants argue that the limitation periods ran before this adversary proceeding was filed on August 12, 2009. In response, Brandt claims that all state statutes of limitations were tolled by § 526(a) of SCRA. Brandt asserts that the tolling provision is mandatory and that as a career servicemember, in active service at all relevant times, he receives the protection of the statute and these actions were timely filed. Brandt cites *Conroy v. Aniskoff*, 507 U.S. 511, 113 S. Ct. 1562, 123 L. Ed. 2d 229 (1993), in support of this reading of SCRA.

Relying on older case law and a 2003 revision of SCRA, defendants reply that the court has discretion to reject tolling under § 526(a) when the servicemember cannot

2

demonstrate that military service resulted in hardship that would excuse timely action. Defendants offer facts indicating that Brandt could have filed his actions sooner.

## DISCUSSION

The Servicemembers' Civil Relief Act of 2003, 50 U.S.C. app. §§ 501-96, has this stated purpose: "to provide for, strengthen, and expedite the national defense through protection extended by this Act to servicemembers of the United States to enable such persons to devote their entire energy to the defense needs of the Nation;" and, "to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." 50 U.S.C. app. § 502(1) & (2). The 2003 codification was the latest in a series of like-minded federal laws dating back to the Civil War.[1] *See* Lt. Colin A. Kisor, *Who's Defending the Defenders?: Rebuilding the Financial Protections of the Soldiers' and Sailor's Relief Act*, 48 NAVAL L. REV. 161, 161-62 (2001). The 2003 enactment was a "complete restatement of the law known as the Soldiers' and Sailors' Civil Relief Act of 1940." 149

---

[1]  The Civil War enactment provided:

Be it enacted by the Senate and the House of Representatives of the United States of America . . . . That whenever, during the existence of the present rebellion, any action, civil or criminal, shall accrue against any person who, by reason of resistance to the execution of the laws of the United States, or the interruption of the ordinary course of judicial proceedings, cannot be served with process for the commencement of such action, civil or criminal, shall have accrued, such person cannot, by reason of such resistance of the laws, or such interruption of judicial proceedings, be arrested or served with process for the commencement of the action, the time during which such person shall be beyond the reach of legal process shall not be deemed or taken as any part of the time limited by law for the commencement of such action.

Act of June 11, 1864, ch. 118, 13 Stat. 123.

Cong. Rec. H3688-03, H3696 (May 7, 2003) (statement of Rep. Smith).[2]  SCRA "applies

to any judicial or administrative proceeding commenced in any court or agency in any

jurisdiction subject to this Act.  This Act does not apply to criminal proceedings."  50 U.S.C.

app.  § 512(b).

Relevant here is § 526(a) of SCRA:

**(a) Tolling of statutes of limitation during military service**

The period of a servicemember's military service *may not* be included in
computing any period limited by law, regulation, or order for the bringing of
any action or proceeding in a court, or in any board, bureau, commission,
department, or other agency of a State (or political subdivision of a State) or
the United States by or against the servicemember or the servicemember's
heirs, executors, administrators, or assigns.

50 U.S.C. app. § 526(a) (emphasis added).

"Military service" is defined under SCRA as:

(A) in the case of a servicemember who is a member of the Army, Navy, Air
Force, Marine Corps, or Coast Guard –

(i) active duty, as defined in section 101(d)(1) of title 10, United States Code,
    . . . .
(C) any period during which a servicemember is absent from duty on account
of sickness, wounds, leave, or other lawful cause.

50 U.S.C. app. § 511(2)(A) & (C).  Period of Military service "means the period beginning

on the date on which a servicemember enters military service and ending on the date on

which the servicemember is released from military service or dies while in military service."

50 U.S.C. app. § 511(3).  Under title 10, § 101(d)(1), active duty "means full-time duty in

---

[2]   "A 'restatement' of a law has long been understood to mean a law that has been updated, clarified
and strengthened, including a gathering of relevant judicial interpretations and a measured casting aside of
those few interpretations that do not comport with the author's understanding of the law's intent."  149 Cong.
Rec. H3688-03, H3696 (May 7, 2003) (statement  of Rep. Smith).

4

the active military service of the United States.  Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned. Such term does not include full-time National Guard duty."  10 U.S.C. § 101(d)(1).  Active service "means service on active duty or full-time National Guard duty." 10 U.S.C. § 101(d)(3).

It is not disputed that Brandt, a career officer in the U.S. Army, was on active duty at all times relevant to this litigation, and is entitled to the benefits and protections of SCRA.  The only disagreement is whether "may not" in SCRA § 526(a) is mandatory or discretionary.

"The starting point in discerning congressional intent is the existing statutory text, and not the predecessor statutes. It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.  So we begin with the present statute." *Lamie v. United States Trustee*, 540 U.S. 526, 534,124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004) (internal citations and quotations omitted).

SCRA itself does not define "may not."[3]  Unlike the word "may," the phrase "may not" is not defined by dictionaries.  With respect to "may" the Supreme Court has said: "The word 'may,' when used in a statute, usually implies some degree of discretion.  The common-sense principle of statutory construction is by no means invariable,

---

[3]    Some federal statutes provide rules of construction that define phrases such as "may not."  The Bankruptcy Code, for example, provides that "may not" "is prohibitive, and not permissive".  11 U.S.C. § 102(4).

5

however, . . . , and can be defeated by indications of legislative intent to the contrary or by obvious inference from the structure and purpose of the statute[.]" *United States v. Rogers*, 461 U.S. 677, 706, 103 S. Ct. 2132, 76 L. Ed. 2d 236 (1983) (internal citations omitted). *See also Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 346, 125 S. Ct. 694, 160 L. Ed. 2d 708 (2005) ("The word 'may' customarily connotes discretion. That connotation is particularly apt where . . . 'may' is used in contraposition to the word 'shall'".).

When used in conjunction with "not," however, "may" is not deemed to connote discretion, rather "may not" most often is construed as if it were "shall not." As the bankruptcy court in *Richardson v. Wells Fargo Home Mortgage, Inc. (In re Brandt)*, 421 B.R. 426, 430 (Bankr. W.D. Mich. 2009), explained "while there may be some ambiguity when a legislature uses the term 'may' to authorize some action (as opposed to the term 'shall'), there is no grammatical ambiguity created when the legislature provides that something 'may not' be done. In a statute, the phrase 'may not' has exactly the same meaning as 'shall not.'" *See Stringer v. Realty Unlimited, Inc.*, 97 S.W.3d 446, 448 (Ky. 2002) ("'[W]here other words are used in connection with 'shall,' 'must,' 'may' or 'might,' which clearly indicate mandatory or directory construction, as the case may be, we have never ignored the force of the descriptive or qualifying language.' . . . Courts that have construed 'may not' have consistently held that the phrase is mandatory and not permissive or discretionary.") (quoting *Clark v. Riehl*, 230 S.W.2d 626, 627 (Ky. 1950)); *In re Denial of Application for Issuance of One Original (New) On-Premises Consumption Beer/Wine License*, 883 P.2d 833 (Mont. 1994) (the phrase "may not consider" precludes

consideration); *Washington v. Gettman*, 782 P.2d 216, 218 (Wash. Ct. App. 1989) (Construing a statute that contained both "shall" and "may not," the court observed: "When a provision contains both the words 'shall and 'may' the presumption is the Legislature intended to distinguish them—'shall' being construed as mandatory and 'may' as discretionary or permissive. However, in the instant case, 'may not' is clearly not permissive in nature. Had the Legislature intended such, it could have simply omitted the word 'not'. . . . [E]mploying a plain reading of the statute, 'may not' is mandatory and none of the language is superfluous."); *In re Meekins*, 554 P.2d 872, 875 (Okla. Ct. App.1976) ("may not be modified" prohibits modification.); *Ryan v. Montgomery*, 240 N.W.2d 236 (Mich. 1976) ("may not be recounted" means "shall not be recounted"); *De Haviland v. Warner Bros. Pictures, Inc.*, 153 P.2d 983 (Cal. App. Ct. 1944) (the words "may not" are mandatory).

Courts addressing the scope of SCRA § 526(a) have uniformly concluded that "may not" is mandatory, not permissive, offers no room for discretion, and that the provision tolls any statute of limitations, general or special, for the period of the servicemember's active duty. In *Baker v. England*, 397 F. Supp. 2d 18 (D.D.C. 2005), a servicemember brought an action under the Privacy Act. The defendants argued that the Privacy Act's two-year statute of limitation barred the action fled in 2005 based on events in 2001 and 2002. The district court easily concluded the action was timely due to tolling of the limitation period by § 526(a) of SCRA: "The court need not waste much discussion as the statute is unambiguous. . . . The D.C. Circuit, . . . , has held that this statute's immediate predecessor and substantive equivalent . . . tolls 'any' limitations period . . . appearing in

'any' law for the bringing of 'nay' action before 'any' court, board or bureau.'" *Id.* at 24 (quoting *Detweiler v. Pena*, 38 F.3d 591, 593 (D.C. Cir. 1994)).

*Perry v. Roper*, 168 S.W.3d 577 (Mo. Ct. App. 2005), was a probate case dismissed by the probate judge when the decedent's son filed the petition for probate after expiration of the one-year limitation under Missouri law.  The Missouri Court of Appeals reversed because the son had been on active duty in the Army and the tolling provision of SCRA applied:  "'The broad, unqualified, and mandatory language of [the tolling statute] leaves little room for judicial interpretation or oversight in its application. . . . 'The tolling statute is unconditional.  The only critical factor is military service; once that circumstance is shown, the period of limitations is automatically tolled for the duration of service.'" 168 S.W.3d at 584-85 (quoting *Anderson v. Dalkon Shield Claimants Trust (In re A.H. Robbins Co.)*, 996 F.2d 716, 718 (4th Cir. 1993) & *Ludwig v. Anspaugh*, 785 S.W.2d 269, 271 (Mo. 1990) (quoting *Ricard v. Birch*, 529 F.2d 214, 216-17 (4th Cir. 1975))).  *See also Giel v. Winter*, 503 F. Supp. 2d 208, 211 & n.3 (D.D.C. 2007) (SCRA tolling provision applies to a servicemember's action under the APA.  Section 526(a), as did its "'immediate predecessor and substantive equivalent, . . . tolls any limitations period . . . appearing in any law for the bringing of any action before any court, board or bureau.' . . . [T]he plain language of § 526 contains no exception to its application—i.e., 'any period limited by law'[.]"  In a footnote, the 2003 amendments "left substantially unchanged the relevant tolling provision[.]"); *Cronin v. United States*, 363 F. App'x 29, 29 n.1 (Fed. Cir. 2010) (tolling provision in § 526(a) "was not substantially changed" from prior version).

8

References in the cited cases to the "immediate predecessor" to the tolling provision of SCRA are references to § 525 of the repealed Soldiers' and Sailors' Civil Relief Act of 1940. The repealed provision provided in relevant part:

> The period of military service **shall not** be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court, board, bureau, commission, department, or other agency of government by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service, nor shall any part of such period which occurs after October 6, 1942 be included in computing any period now or hereafter provided by any law for the redemption of real property sold or forfeited to enforce any obligation, tax, or assessment.

50 U.S.C. app. § 525 (repealed) (emphasis added).

The Supreme Court interpreted § 525 of the former Act in *Conroy v. Aniskoff*, 507 U.S. 511, 113 S. Ct. 1562, 123 L. Ed. 2d 229 (1993). *Conroy* was a property tax redemption case in which trial and appellate courts in Maine rejected application of § 525 following "a line of decisions that refused to toll the redemption period unless the taxpayer could show that military service resulted in hardship excusing timely legal action. It . . . would be absurd and illogical to toll limitations periods for career service personnel who had not been handicapped by their military status." *Id.* at 513-14 (internal quotations and footnotes omitted).

The Supreme Court disagreed. "The statutory command in § 525 is unambiguous, unequivocal, and unlimited. It states that the period of military service 'shall not be included' in the computation of 'any period now or hereafter provided by any law for the

9

redemption of real property'[.]" *Id.* at 514. The long history and precise structure of the statute supported this outcome:

> The long and consistent history and the structure of this legislation . . . leads us to conclude that—just as the language of § 525 suggests—Congress made a deliberate policy judgment placing a higher value on firmly protecting the service member's redemption rights than on occasionally burdening the tax collection process. Given the limited number of situations in which this precisely structured statute offers such absolute protection, we cannot say that Congress would have found our straight-forward interpretation and application of its words either absurd or illogical. If the consequences of that interpretation had been—or prove to be—as unjust as respondents contend, we are confident that Congress would have corrected the injustice—or will do so in the future.

*Id.* at 517-18 (footnote omitted).

The Supreme Court observed in *Conroy* that "[s]everal provisions of the statute condition the protection they offer on a showing that military service adversely affected the ability to assert or protect a legal right. . . . The comprehensive character of the entire statute indicates that Congress included a prejudice requirement whenever it considered it appropriate to do so, and that its omission of any such requirement in § 525 was deliberate." *Id.* at 515-16. The Court explained:

> Legislative history confirms that assumption. Since the enactment of the 1918 Act, Congress has expressed its understanding that absolute exemptions might save time or money for service members only at the cost of injuring their own credit, their family's credit, and the domestic economy; it presumably required a showing of prejudice only when it seemed necessary to confer on the service member a genuine benefit. By distinguishing sharply between the two types of protections, Congress unquestionably contemplated the ways that either type of protection would affect both military debtors and their civilian creditors.

*Id.* at 516-17 (footnote omitted).

Courts interpreting the tolling provision as amended and codified in SCRA § 526(a) have continued to follow the Supreme Court's reasoning in *Conroy* notwithstanding the change in the statutory command from "shall not" to "may not." In *Walters v. Nadell*, 751 N.W.2d 431 (Mich. 2008), *rev'g* No. 263503, 2006 WL 748904 (Mich. App. Mar. 23, 2006), the Michigan Supreme Court concluded summarily that the 2003 amendments did not insert ambiguity into the tolling provision.

> [W]e . . . hold that current 50 USC Appendix 526 is "unambiguous, unequivocal, and unlimited." The Court of Appeals opined that the change from "shall not" to "may not" rendered the tolling discretionary. Although the term "shall" is clearly mandatory, and the term "may" is typically permissive, "may not," in the context of 50 USC Appendix 526(a), is not permissive. "May not," as it is used in 50 USC Appendix 526(a), has the same meaning and import as "cannot" or its predecessor, "shall not." The provision clearly provides that the time that a servicemember is in military service is excluded from any period of limitations.

*Id.* at 434-35.

In *In re Adoption of W.C.*, No. CA2010-02-020, 2010 WL 3101879 (Ohio Ct. App. Aug. 9, 2010), the court considered whether the one-year limitation under Ohio law for adoption of a child without the natural father's consent was tolled by § 526(a) of SCRA during the father's period of active duty. The court found tolling without conditions:

> Generally, courts have determined that the SCRA is to be "liberally construed" to "protect those who have been obliged to drop their own affairs to take up the burdens of th enation." In addition, the express language of the SCRA makes certain that the tolling of a statute of limitations pursuant to Section 526(a) is "unconditional." *Bickford v. United States*, [656 F.2d 636, 639 (Ct. Cl. 1981)]. "The broad, unqualified and mandatory language of [the tolling statute] leaves little room for oversight in its application[.]" *State ex rel Perry*, 168 S.W.3d 577 (Mo. App. Ct. 2005) (quoting *In re A.H. Robins Co.*, [996 F.2d 716, 718 (4th Cir. 1993)]. The only critical factor is military service, and once that circumstance is shown, the period of limitation is automatically tolled for the duration of the servicemember's service.

*Id.* at *3.  *See also In re Adoption of J.D.P.*, 198 P.3d 905 (Okla. 2008) (Limitation period for consent by a natural parent to adoption is tolled during military service of parent; tolling provision was "unconditional" and "automatic" and not appropriate to read "exceptions" into the statute).  With respect to the 2003 amendment from "shall not" to "may not," the Ohio court noted: "Notwithstanding the 2003 amendment from 'shall not' to 'may not,' the change in language did not render the tolling provision discretionary, as amended Section 526(a) 'clearly provides that the time that a servicemember is in military service is excluded from any period of limitations.'"  *Id.* at *2 n.2 (quoting *Walters v. Nadell*, 751 N.W.2d at 434).

Defendants here urge that the 2003 change from "shall not" to "may not" signaled Congressional intent to overrule the Supreme Court's decision in *Conroy*.   In the alternative, defendants argue the change created ambiguity in the statute that is clarified by legislative history suggesting the exercise of discretion by courts to toll statutes of limitations only when a servicemember's service imposes actual hardship.  Defendants cite the general statement of legislative purpose in 50 U.S.C. app. § 502(b)—to give servicemembers a "temporary suspension of judicial . . . proceedings,"— and the statement of one Congressman: "the need to be fair to all parties by relying upon the courts to determine whether the servicemember's ability to protect his or her rights or to meet obligations has been materially affected by military service."  149 Cong. Rec. H3688, 3697 (daily ed. May 3, 2003) (statement of Rep. Smith).

"May not" in the 2003 version of the tolling provision is not ambiguous.  A review of legislative history does not lead away from the conclusion that § 526(a) of SCRA is mandatory and requires no demonstration of hardship.

12

The legislation that became SCRA had its origin a decade earlier in H.R. 4763 introduced in the House of Representatives in April 1992. H.R. 4763, similarly named the Servicemember's Civil Relief Act, included this provision for the tolling of statutes of limitations:

**Sec. 206. Statute of Limitations.**

(a) **Tolling of Statutes of Limitation During Military Service**—The period of a servicemember's military service may not be included in computing any period limited by law, regulation, or order for the bringing of any action or proceeding in a court, or in any board, bureau, commission, department, or other agency of a State or the United States by or against the servicemember or the servicemember's heirs, executors, administrators, or assigns.

(b) **Redemption of Real Property**—A period of military service may not be included in computing any period provided by law for the redemption of real property sold or forfeited to enforce an obligation, tax, or assessment.

(c) **Inapplicability of Section**—This section does not apply with respect to a period limited by law or regulation for the filing of a claim or lawsuit against the United States by a servicemember or a servicemember's heirs, executors, administrators, or assigns unless–

(1) the cause of action accrues in time of war or armed conflict or during a period of military service by the servicemember outside the United States, or any of these circumstances intervenes within two years after the cause of action accrues, and if material effect is shown; and

(2) the claim is filed not later than the expiration of the applicable statute of limitations or two years after the war or military action or period of military service outside the United States is terminated, whichever is later.

(d) **Inapplicability to Internal Revenue Laws**—This section does not apply with respect to any period of limitation prescribed by or under the internal revenue laws of the United States.

H.R. 4763, § 206, 102 Cong. (1992).

13

The change from "shall not" to "may not" was present in H.R. 4763. The only legislative discussion of H.R. 4763 did not address the change in language of former § 525. The only mention of the tolling provision was to note that claims against the United States were tolled only under specific circumstances defined in the Bill. 138 Cong. Rec. H2321-02 (Apr. 3, 1992) ("Changes statute of limitations tolling provision in claims against the United States except for cause of action accruing during a period of war or armed conflict or during a period of service outside the United States. In such cases, requires servicemember to show material effect of service."). There is no committee report on H.R. 4763, and the bill proceeded no further after introduction. H.R. 4763 is referenced in 2003 in the legislative history to H.R. 100—the bill that became SCRA. *See* 149 Cong. Rec. H3688-03, H3697 (May 7, 2003).

The House Report to accompany H.R. 100 is robust with discussion of many amendments and new provisions including countless citations and references to court decisions interpreting the former statute. H.R. Rep. No. 108-81 (Apr. 30, 2003). But with respect to the tolling provision that would become § 526(a) of SCRA, the House Report is slim: the proposed amendments

> replace the term "government" with "a State (or political subdivision if [*sic*] a State) or the United States" to clarify the intent that this section on the tolling of statutes of limitations would apply to all levels of government: local, state and federal. [citations omitted.] This section would add a specific provision on redemption of real property. To consolidate similar sections, subsection (c) would incorporates section 207 of the current Act on the tolling of internal revenue laws.

H.R. Rep. 108-81, **45.

More generally, the House Report explained that SCRA would

[p]rovide that in deciding when the period of time specified in a statute of limitations expires for any action or proceeding, the period of a servicemember's military service is not counted, and also provide that the period of a servicemember's military service may not be included in the period for redemption of real property that has been sold or forfeited to enforce a tax, obligation, or assessment.

H.R. Rep. 108-81, **32.

The House Report recognized that many protections under the new law were specifically conditioned that the servicemember be "materially affected" by military service. H.R. Rep. 108-81, **42. The Committee on Veterans Affairs declined suggestions, however, to define "materially affected" as it found that the courts had "generally interpreted the term in ways that are consistent" with the intent of existing law. H.R. Rep. 108-81, **42.

Despite all the detail, the House Report is silent with respect to the change from "shall not" to "may not" in the tolling provision and does not once mention the Supreme Court's decision 10 years earlier in *Conroy*. Defendants would read this silence as intent to overrule Supreme Court precedent. "Congress does not overrule recent Supreme Court precedent so subtly." *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006). Defendants' argument is further muddled by the fact that the change from "shall not" to "may not" first appeared, without explanation, in legislation offered a year before the Supreme Court decided *Conroy*.

In reading a statute, courts follow "the cardinal rule that a statute is to be read as a whole[.]" *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221, 112 S. Ct. 570, 116 L. Ed. 2d 578 (1991). *See also Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S. Ct. 2431, 41 L. Ed. 2d 374 (1974) (In reading a statute a court must not "look merely to a particular clause,"

15

but consider it "in connection with the whole statute."). "[T]he meaning of statutory language, plain or not, depends on context." *Id.* A court must "look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Gozlon-Peretz v. United States*, 498 U.S. 395, 407, 111 S. Ct. 840, 112 L. Ed. 2d 919 (1991). *See also Dada v. Mukasey*, 554 U.S. 1, 128 S. Ct. 2307, 2317, 171 L. Ed. 2d 178 (2008).

Looking to SCRA as a whole leads to the same conclusion the Supreme Court reached in *Conroy* with respect to the former Act:

> Several provisions of the statute condition the protection they offer on a showing that military service adversely affected the ability to assert or protect a legal right. . . . The comprehensive character of the entire statute indicates that Congress included a prejudice requirement whenever it considered it appropriate to do so, and that its omission of any such requirement in § 525 [or here 526] was deliberate.

*Conroy*, 507 U.S. at 515-16.

The stay of proceedings provisions of SCRA are one example among many. 50 U.S.C. app. § 522. A stay of a proceeding of which the servicemember has notice will be granted for a period of 90 days if

> (A) A letter or other communication setting forth facts stating the manner in which current military duty requirements materially affect the servicemember's ability to appear and stating a date when the servicemember will be available to appear. (B) A letter or other communication from the servicemember's commanding officer stating that the servicemember's current military duty prevents appearance and that military leave is not authorized for the servicemember at the time of the letter.

50 U.S.C. app. § 522(b). An additional stay beyond 90 days may be applied for and granted "based on continuing material affect of military duty on the servicemember's ability

to appear." 50 U.S.C. app. § 522(c). *See also* 50 U.S.C. app. §§ 521(g) (setting aside a default judgment entered while the servicemember was on active duty conditioned on whether servicemember was "materially affect by reason of that military service in making a defense to the action"); 524 (stay or vacation of judgments, attachments or garnishments if court concludes that the servicemember "is materially affected by reason of military service in complying with a court judgment or order"); 531(b) (stay of eviction of servicemember "whose ability to pay the agreed rent is materially affected by military service"); 533(b) (stay of proceedings or adjustment of obligations on mortgages "when the servicemember's ability to comply with the obligation is materially affect by military service"); 535a(a) (termination of cellular phone service when a servicemember receives orders to deploy outside of the continental United States); 538 (extension of protection of SCRA "if the dependent's ability to comply with a lease, contract, bailment, or other obligation is materially affected by reason of the servicemember's military service").

Defendants' argument that Congress intended the phrase "may not" to confer completely unguided discretion on courts to toll statutes of limitations does not fit with the design of SCRA as a whole. The detail and precision with which Congress drafted other provisions and conditioned other benefits and protections of SCRA is clear. When Congress intended the courts to use discretion with respect to a benefit in SCRA, it set forth exactly what courts were to consider. Satisfied with how courts had interpreted "materially affected" by military service[4]—the condition most often found elsewhere in SCRA—no definition of the phrase was included in H.R. 100. Tolling statutes of limitations

---

[4]    *See* H.R. Rep. 108-81, **42.

17

during periods of active military service without judicial review for adverse affect is a fundamental, long-standing benefit of SCRA and its predecessor.

Defendants here, like the defendant in *Conroy*, insist that reading the tolling provision as absolute and mandatory leads to illogical and absurd results in the case of a career military officer.[5]  The Supreme Court rejected exactly this argument in *Conroy*:

> [B]oth the history of this carefully reticulated statute, and our history of interpreting it, refute any argument that a literal construction of § 525 is so absurd or illogical that Congress could not have intended it. . . .  The Court had emphasized the comprehensive character and carefully segregated arrangement of the various provisionf of the World War I statute [in a prior decision], and it had considered the consequences of requiring a showing of prejudice when it construed the World War II statute in [another prior decision].  Since we presume that Congress was familiar with those cases, we also assume that Congress considered the decision . . . to interpret and apply each provision of the Act separately when it temporarily reestablished the law as a whole in 1940, and then considered [the Court's prior] analysis of a prejudice requirement [in the context of a judicial stay] when it permanently extended the Act in 1948.

*Conroy*, 507 U.S. at 516.

For all the reasons expressed by the Supreme Court in *Conroy*, a reading of § 526(a) consistent with *Conroy* is not illogical or absurd.  That a statute of limitations is tolled during a servicemember's active duty does not mean that an action cannot be commenced by or against the servicemember.  Once commenced, an action will proceed, or be stayed, in accordance with the provisions of SCRA that govern stays of proceedings—including consideration whether the servicemember is materially affected by military service.

---

[5]    The Supreme Court chided in *Conroy*, "[t]he length of a suspension that lasts as long as the period of active service is 'temporary,' however, whether it applies to a short enlistment or a long career."  *Conroy*, 507 U.S. at 515 n.7.

## CONCLUSION

Congressional silence in 2003, Supreme Court holdings and the structure of SCRA all point to the conclusion that SCRA § 526(a) is mandatory. Once a servicemember's military service is established, statutes of limitations are tolled "during the period of a servicemember's military service . . . for the bringing of any action or proceeding in a court . . . by or against the servicemember[.]" Partial summary judgment is granted to plaintiff.[6]

An appropriate Order will be entered.

---

[6] Laches is among the issues listed in the Pretrial Order for some defendants. Nothing in this opinion is intended to address that issue. *See Deering v. United States*, 620 F.2d 242, 244 (Ct. Cl. 1980) (en banc) (application of 50 U.S.C. app. § 525 (now 526(a)) does not mean that servicemembers are immune from the doctrine of laches); *Ingham v. United States*, No. 07-124 C, 2007 WL 5172422 (Ct. Cl. Nov. 26, 2007) ("The doctrine of laches is an affirmative defense which may be applied to military cases irrespective of the statute of limitations. To invoke the affirmative defense of laches, a defendant must satisfy two prerequisites: (1) the claimant's delay in filing suit was both unreasonable and inexcusable, and (2) the delay caused either economic prejudice or injury to the defendant's ability to mount a defense. Defendant has the burden of proving that it was prejudiced by the plaintiff's delay in filing suit. Defendant's failure to prove both elements prevents the application of laches.") (internal citations omitted).

# United States Bankruptcy Court
## For the Middle District of Tennessee

In re: Donald Brandt,

   *Debtor.*

_____

Donald Brandt,

   *Plaintiff,*

  *v.*

Joe Weyant, Joe Weyant Attorney at Law, PLLC, Tracy Ann Puckett, Dennis Stanford, Lowry Shrader, Julianne Broden, Keller Williams Realty, Lance Miller, The Kenedy Law Firm, PLLC, Carrie Gasaway and Sharon Massey, both individually and a/b/a Gasaway & Massey, and Farmers & Merchants Bank,

   *Defendants.*

Case No. 3:09-bk-08066
Chapter 11

Hon. Keith M. Lundin

Adv. No. 3:09-0305A
Adv. No. 3:09-0416A

Hon. Keith M. Lundin

## Appearances

David O. Day
Benjamin D. Marsee
Law Office of David Day PC
19 S. Jefferson Ave.
Cookeville, TN 38501
(931) 528-7002
Attorneys for Donald E. Brandt

Thomas F. Mink
William B. Hicky
Taylor Pigue Marchetti & Mink PLLC
2908 Poston Ave.

Edward M. Graves, Jr.
Law Office of Edward M. Graves, Jr.
502 South Gay St., Ste, 412
PO Box 2406
Knoxville, TN 37901
(865) 544-1974
Attorney for Donald E. Brandt

Julianne Borden
Inmate No. 18116-075
Victorville Medium II Federal
Correctional Institute

20

Nashville, TN 37203
(615) 320-3225
Attorneys for Joe Weyant and
 Joe Weyant Attorney at Law, LLC

PO Box 5300
Adelanto, CA 92301
Pro se Defendant

Thomas C. Corts
Ortale Kelley Herbert & Crawford
200 4th Ave. North
Noel Place, 3d Floor
Nashville, TN 37219-8985
(615) 256-9999
Attorney for Lowry Shrader

Rodger Bowman
1995 Madison St.
Clarksville, TN 37043
Attorney for Lowry Shrader

Roger A. Maness
Marks, Shell & Maness
233-A Dunbar Cave Rd.
Clarksville, TN 37043
(931) 552-6000
Attorney for Farmers & Merchants Bank

Karl M. Braun
Byron Lindberg
Hall Booth Smith & Slover, P.C.
611 Commerce St., Ste. 3000
Nashville, TN 37203
(615) 313-9913
Attorneys for Dennis Stanford

THE HONORABLE KEITH M. LUNDIN
U.S. BANKRUPTCY JUDGE

This Order has Been electronically
signed.  The Judge's signature and
Court's seal appear at the top of the
first page.
United States Bankruptcy Court.